IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | *   CRIM. NO. JKB-04-0323 |
| RAESHIO RICE, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

On October 19, 2006, Defendant Raeshio Rice pleaded guilty to racketeering conspiracy in violation of 18 U.S.C. §§ 1962(d) and 1963 and conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. (*See* ECF No. 379.) He was sentenced to a total term of 324 months' imprisonment. (*See* Judgment, ECF No. 400.) Rice has served approximately 70% of his 324-month sentence and has a projected release date of April 6, 2028. He is currently incarcerated at FCI Fort Dix, located on Joint Base McGuire-Dix-Lakehurst in New Jersey.[1] On May 5, 2021, Rice filed a Motion for Compassionate Release seeking a reduction in his sentence. (ECF No. 658.) The Court appointed counsel to represent Rice on May 10, 2021, and a Supplemental Motion for Compassionate Release was filed on September 9, 2021. (ECF Nos. 660, 666.) Rice's Supplemental Motion is now ripe and no hearing is required for its disposition. *See* Local Rules 105.6, 207 (D. Md. 2021). As explained more fully below, Rice's Motion for Compassionate Release and its Supplement (ECF Nos. 658, 666) will be DENIED because such relief is not warranted by the sentencing factors enumerated in 18 U.S.C. § 3553(a).

---

[1] Although Rice's Motion for Compassionate Release and its Supplement both state that Rice is incarcerated at FCI Cumberland in Cumberland, Maryland, current BOP records show that Rice is now located at FCI Fort Dix. *See* Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/mobile/find_inmate/byname.jsp (last visited Aug. 3, 2022).

1

## *I. Legal Standard and Analysis*

Under 18 U.S.C. § 3582(c)(1)(A), a district court may reduce a convicted defendant's sentence when "extraordinary and compelling reasons warrant such a reduction," but only "after considering the factors set forth in 18 U.S.C. § 3553(a)." A defendant may only move for compassionate release under § 3582(c)(1)(A) after he or she "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* Rice filed an administrative request with the warden of FCI Cumberland dated March 15, 2021, a copy of which he attached to his initial Motion for Compassionate Release, in satisfaction of this requirement. (*See* ECF No. 658-2); *see also United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021) (concluding that the exhaustion requirement in this context "is a non-jurisdictional claim-processing rule"); *United States v. Mouzon*, Crim. No. ELH-16-0299, 2022 WL 1289668, at *12 (D. Md. Apr. 29, 2022) (assuming administrative request submitted at first incarceration facility was sufficient to satisfy § 3582(c)(1)(A) exhaustion requirement where defendant was transferred to second facility). The Court must now decide whether Rice has provided evidence establishing the existence of "extraordinary and compelling reasons" for his release, and if so, whether compassionate release is consistent with the factors set forth in 18 U.S.C. § 3553(a).

### *A. Extraordinary and Compelling Reasons*

Pursuant to 28 U.S.C. § 994(t), the U.S. Sentencing Commission has explained that "extraordinary and compelling reasons" for a sentencing reduction exist where: (1) a defendant has a terminal or serious medical condition; (2) a defendant is at least 65 years old, is experiencing serious decline in physical or mental health, and has served at least 10 years or 75% of his sentence;

(3) specific family circumstances arise requiring defendant to serve as the caregiver of his spouse or minor children; or (4) other reasons the Director of the Bureau of Prisons deems to be "extraordinary and compelling." *See* U.S.S.G. § 1B1.13 cmt. n.1 (A)–(D). Following the passage of the First Step Act of 2018, however, district courts may now "'consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (emphasis in original) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). Rice argues that his medical conditions—which he argues render him particularly vulnerable to COVID-19—and changes in law since his sentencing in 2007 together constitute extraordinary and compelling reasons warranting his release. (*See* ECF No. 666 at 2–10; ECF No. 686 at 4.) Although the latter development may constitute an extraordinary and compelling reason, because the Court concludes that the § 3553(a) factors weigh against Rice's release, it does not definitively resolve this question.

### 1. *COVID-19*

Rice suffers from several medical conditions, some of which he asserts contribute to his increased risk of contracting COVID-19: obesity; hypertension; hyperlipidemia (high cholesterol); pre-diabetes; "chronic neck and back pain related to multi-level spondylolisthesis"; and "multi-level encroachment of cervical spinal nerves." (*Id.* at 3 (citing Rice's medical records).) He argues that his hypertension and his obesity constitute two "risk factors identified by the CDC." (*Id.*) Although Rice cites several cases concluding that defendants suffering from obesity along with several other risk factors presented extraordinary and compelling reasons for compassionate release, (*see id.* at 5), "there are also multiple cases denying compassionate release to defendants with obesity and a preexisting condition that increased defendants' risk of severe illness." *United*

3

*States v. Carter*, Crim. No. PWG-17-529, 2021 WL 307417, at *3 (D. Md. Jan. 29, 2021) (collecting cases).

While these risk factors may have been sufficient to establish an extraordinary and compelling reason at the outset of the pandemic, the Court concludes that they are insufficient to do so now. *See United States v. Langford*, Crim. No. JKB-15-0539, 2022 WL 1443868, at *2 (D. Md. May 6, 2022) (concluding that defendant's hypertension, obesity, and unsubstantiated cancer diagnosis "tip[ped] the balance against" finding COVID-related extraordinary and compelling reasons). The widespread availability of "highly effective . . . vaccines dramatically affect[s] whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release." *United States v. Sanders*, Crim. No. SAG-06-0087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021). Although Rice correctly points out that his inoculation[2] against COVID does not guarantee complete immunity from the virus, (*see* ECF No. 666 at 6–7), people who encounter breakthrough infections—infections in individuals who are fully vaccinated—"tend to experience less severe symptoms than people who are unvaccinated." CDC, *COVID-19 Vaccines Work*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited July 26, 2022). Because "COVID-19 vaccines are effective at preventing severe disease, hospitalization, and death[,]" *id.*, the Court finds that their large-scale availability counsels against concluding that Rice's medical conditions constitute an extraordinary and compelling reason warranting his release.[3] *See United States v. Broadfield*,

---

[2] Rice reports that "he was fully vaccinated as of September 1, 2021." (ECF No. 666 at 4.) It is unclear whether Rice has received a third dose since the filing of the Supplemental Motion.

[3] Rice also argues that the number of COVID cases at FCI Cumberland support a finding of "extraordinary and compelling" reasons. (*See* ECF No. 666 at 3.) While Rice asserts in his Supplemental Motion that there were eleven cases at FCI Cumberland, since the Motion's filing, it appears that this number has dropped to seven cases. *See* Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/index.jsp (last visited Aug. 3, 2022). Moreover, it appears that this data point is now irrelevant as current BOP records reflect that Rice is now incarcerated at FCI Fort Dix, where zero inmates and four staff members have confirmed active COVID-19 cases. *See id.*; Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/mobile/find_inmate/byname.jsp (last visited Aug. 3, 2022). While the Court

4

5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.").

### *2. Changes in Law*

Rice also argues that changes in the law since his 2007 sentencing make his 324-month term of incarceration especially severe and constitute "extraordinary and compelling" reasons supporting compassionate release. First, Rice asserts that if he were sentenced today, his base offense level would be 36 under U.S.S.G. § 2D1.1(c)(2), rather than 38 as calculated at the time of his sentencing. (ECF No. 666 at 9.) Rice correctly observes that Amendment 782 to the U.S. Sentencing Guidelines decreased the base offense level for the drug quantities associated with his crimes of conviction—more than 150 kilograms of cocaine and more than 30 grams of heroin, Presentencing Report ("PSR") ¶¶ 6–7—to 36. *See* U.S. Sent'g Guidelines Manual Amend. 782 (U.S. Sent'g Comm'n Nov. 1, 2014). However, the Court already determined that application of the § 3553(a) factors prevented the Court from reducing Rice's sentence on this basis when it denied Rice's 2017 Motion to Reduce Sentence under Amendment 782. (*See* ECF Nos. 606, 618.) Because the Court concludes that the § 3553(a) factors continue to weigh against a sentence reduction, the Court will not resolve whether Rice's Amendment 782 argument constitutes an "extraordinary and compelling" reason within the meaning of § 3582(c)(1)(A).

Second, Rice argues that he no longer qualifies as a career offender under U.S.S.G. § 4B1.1 because his offenses of conviction do not constitute career offender predicates and because one of

---

acknowledges that COVID-19 has generally exacerbated the punitive nature of incarceration, *see United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020), it nonetheless concludes that the present state of COVID-19 infections at FCI Fort Dix does not support a finding of "extraordinary and compelling" reasons. *See United States v. Reeder-Shaw*, Crim. No. 17-0198, 2021 WL 2042734, at *2 (S.D.W. Va. May 21, 2021) (declining to "find that BOP [was] unable to control the spread of COVID-19 at FCI Milan" where one inmate and four staff members had active COVID-19 cases).

his prior convictions originally supporting application of this enhancement is not categorically a "crime of violence." (*See* ECF 666 at 9–10.) Rice suggests that neither of his offenses of conviction—racketeering conspiracy under 18 U.S.C. §§ 1962(d), 1963 and conspiracy to distribute and possess with intent to distribute under 21 U.S.C. § 846—today support application of the Chapter Four career offender enhancement under U.S.S.G. § 4B1.1. *See United States v. McCollum*, 885 F.3d 300, 303 (4th Cir. 2018) (applying categorical approach to determine whether prior conspiracy conviction under § 1959(a)(5) constituted a "crime of violence" to support application of a sentencing enhancement); *United States v. Simmons*, 11 F.4th 239, 248 (4th Cir. 2021) (concluding that "a RICO conspiracy[ under § 1962(d)] . . . does not categorically qualify as a 'crime of violence'" under 18 U.S.C. § 924(c)); *United States v. Norman*, 935 F.3d 232, 237–38 (4th Cir. 2019) (concluding that a conspiracy conviction under § 846 "does not qualify as a 'controlled substance offense' under the Guidelines"). He further argues that his 1992 assault conviction no longer functions as a qualifying prior offense for the Chapter 4 career offender enhancement applied at his sentencing because a conviction under Maryland's second-degree assault statute is not a "crime of violence" within the meaning of § U.S.S.G. 4B1.2.[4] *See United States v. Royal*, 731 F.3d 333, 342 (4th Cir. 2013) (concluding that defendant's "2007 second-degree assault conviction [did] not constitute a predicate 'violent felony' supporting a sentencing enhancement under" the Armed Career Criminal Act).

These jurisprudential developments may possibly constitute "extraordinary and compelling" reasons supporting compassionate release. Indeed, if the Court were to accept these arguments and calculate Rice's Guideline range based on a total offense level of 34 and criminal

---

[4] The Government observes that the PSR is ambiguous with respect to whether Rice's 1992 assault conviction is indeed vulnerable to Rice's argument under *United States v. Royal*, 731 F.3d 333 (4th Cir. 2013). (*See* ECF No. 683 at 24 n.18.) As already indicated, the Court will not decide whether this argument bolsters a finding of extraordinary and compelling reasons supporting compassionate release because the § 3553(a) factors weigh against such relief.

history category IV, the new Guideline range would be 210–262 months. However, the Court will not conclusively decide this question. As already established, application of the § 3553(a) factors lead the Court to conclude that Rice's 342-month term of incarceration is "sufficient, but not greater than necessary" to achieve the purposes of sentencing.

### B. *Section 3553(a) Factors*

To permit a sentence reduction under § 3582(c)(1)(A), the Court must further conclude that "the § 3553(a) sentencing factors merit [such] a reduction." *McCoy*, 981 F.3d at 275. When imposing a sentence, federal district courts must consider

> (1) [the defendant's] personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants.

*United States v. Bryant*, Crim. No. CCB-95-202, 2020 WL 2085471, at *4 (D. Md. Apr. 30, 2020); *see* 18 U.S.C. § 3553(a)(1)–(6).

This is not the Court's first consideration of whether the § 3553(a) factors support a reduction in Rice's sentence. In 2017, Rice filed a Motion for a Reduced Sentence based on retroactive application of Amendment 782 of the U.S. Sentencing Guidelines, under which the Guidelines yielded a lower base offense level (and, accordingly, a lower Guidelines range) based on the stipulated drug quantities involved in his crimes of conviction than that which applied at the time of Rice's original sentencing. (ECF No. 606.) Though he was facially eligible for relief, the Court ultimately denied Rice's Amendment 782 Motion on July 5, 2017, based on application of the § 3553(a) factors. (ECF No. 618.) Particularly relevant was the Court's finding that Rice's "post-conviction conduct"—including his participation in "a very violent assault on another inmate"—"should disqualify him from sentence reduction[.]" (*Id.* at 1.)

7

Considering the § 3553(a) factors based on the facts presented by the present Motion, the Court again concludes that they do not favor a sentence reduction. Beginning with the nature and circumstances of the offense, Rice was convicted of two serious offenses based on his nearly decade-long involvement in the Rice Organization: a racketeering enterprise that distributed "cocaine and heroin to customers in the Baltimore area[.]" PSR ¶ 16. Rice and his co-conspirators "distributed and possessed with the intent to distribute more than 150 kilograms of cocaine and 30 kilograms of heroin[,]" and Rice purchased luxury items with the proceeds he earned from these sales. *Id.* ¶¶ 17–18. The sentencing court acknowledged that Rice had "some leadership role" in the enterprise, even if the Government did not seek an enhancement based on that role. (*See* Sent'g Tr. 5:14–15, 5:19–20, 5:24–25.)

Despite the nonviolent character of the conduct described in the stipulated facts of Rice's offense (PSR ¶¶ 13–19), the Court remains concerned that the violent nature of Rice's 1992 assault conviction, his role in the Rice Organization, and his post-conviction conduct demonstrate a need to protect the public. The PSR describes the circumstances surrounding Rice's 1992 assault conviction, explaining that the victim—who was shot five times—identified Rice as his assailant. (PSR ¶ 37.) Evidence of Rice's subsequent violent conduct minimizes the decay factor of this thirty-year-old conviction. A review of the entire record in this case establishes that the Rice Organization was violent.[5] (*See, e.g.*, ECF No. 448 (judgment against co-defendant Eric Hall for,

---

[5] A Supplemental Report prepared by the U.S. Probation Office about Eric Hall ("Hall Supplemental Report" or "Report"), one of Rice's co-defendants, further substantiates Rice's involvement in the violent pursuits of the Rice Organization. The Report states that alongside Howard Rice, Rice's brother and another co-defendant, Rice "directed Eric Hall to kill . . . individuals identified as being responsible" for abducting and threatening Howard Rice's mother and her boyfriend. Hall Suppl. Report ¶ 6. As a result, Hall shot and killed Dante Green on December 16, 1996. *Id.* The Hall Supplemental Report further provides that later that same month, Hall and Rice shot another individual in the back of the neck—though in this instance, the individual survived. *Id.*

Although Rice objects to the Court's consideration of facts not stipulated by the parties at the time of his sentencing (*see* ECF 686 at 4), the Court concludes that it is appropriate to do so here, where it appears that further investigation of the Rice Organization led to the uncovering of additional information about the enterprise after Rice's sentencing. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background,

8

among other crimes, "[p]ossession and discharge of a firearm in furtherance of a drug trafficking crime resulting in death").) Even the sentencing court—bound by the facts "established in this case by agreement" at the time—expressed its "misgivings" about its inability to consider certain "facts of the conspiracy" and "the smell of violence about the case[.]" (Sent'g Tr. 18:6–18:25.)

Compounding Rice's violent pre-conviction conduct is his disciplinary record while incarcerated. Among other infractions, Rice was involved in a fight with another inmate on December 17, 2007, and a serious assault on another inmate on December 17, 2010. (ECF No. 683-4 at 1–2.) This troubling post-conviction history led the Court to deny his Amendment 782 Motion (*see* ECF No. 618), and when considered with Rice's participation in the pursuits of a violent drug trafficking enterprise, it leads the Court to conclude that compassionate release is inappropriate.

Rice argues that his conduct since 2013—the year of his most recent disciplinary infraction—should outweigh concerns about his disciplinary record. (ECF 666 at 11.) He has pursued several educational, programmatic, and vocational training opportunities. (*Id.*) He has also "sought out programs aimed at self-awareness[,] improvement[,] . . . overcoming obstacles[,] and parenting[,]" including the completion of a 100-hour "Men of Influence Reentry" program. (*Id.*; *see* ECF No. 668-9.) Friends and family members have attested to his personal growth in recent years. (*See* ECF Nos. 668-10–668-16 (letters of support).) The Court applauds Rice's

---

character, and conduct of a person convicted of an offense which a [federal court] may receive and consider for the purpose of imposing an appropriate sentence."); *see also United States v. Clark*, Crim. No. 19-0152, 2021 WL 1254477, at *1–*2 (M.D.N.C. Apr. 5, 2021) (applying the "relaxed" standard "allowing sentencing courts to consider 'any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy'" used at sentencing to motions for compassionate release). Even setting aside these specific incidents, the Court concludes that Rice's affiliation with and leadership role in the violent Rice Organization, his 1992 assault conviction, and post-conviction disciplinary record are sufficient to continue to implicate the need to protect the public. *See United States v. Bowling*, Crim. No. CCB-16-0267, 2021 WL 5845150, at *3 (D. Md. Dec. 8, 2021) (considering defendant's conceded membership in a gang that "routinely engaged in violent activities" in denying compassionate release of defendant convicted of drug distribution racketeering conspiracy despite good disciplinary record).

9

substantial efforts to achieve educational and personal growth while incarcerated and agrees that an isolated event in a defendant's post-conviction disciplinary record should generally not bar his or her eligibility for compassionate release. *See United States v. Hickman*, Crim. No. CCB-07-0261, 2020 WL 6393391, at *3–*4 (D. Md. Nov. 2, 2020) (granting compassionate release of defendant convicted of drug trafficking offense with poor disciplinary record but whose past criminal activity did not involve weapons or allegations of violence). However, Rice's participation in a 2007 fight and a serious 2010 assault are not isolated incidents of violence, particularly when considered in light of his involvement with the Rice Organization. Because the Court remains concerned that the violence in Rice's past—both before and after his conviction and sentencing in this case—continue to implicate the need for Rice's sentence to protect the public, the balance of the § 3553(a) factors continues to weigh against a sentence reduction.

## II. Conclusion

For the foregoing reasons, Rice's Motion for Compassionate Release and its Supplement (ECF Nos. 658, 666) are DENIED.

DATED this __3__ day of August, 2022.

BY THE COURT:

_/s/ James K. Bredar_
James K. Bredar
Chief Judge